Schinz vs. Schinz.

SCHINZ, Appellant, vs. SCHINZ, Executor, Respondent.
ZENTNER, Appellant, vs. SCHINZ, Executor, Respondent.

*April 5 — April 23, 1895.*

*Wills: Construction: Compensation of executor: Appeal: Exceptions.*

1. By his will a testator, after giving to his wife the use and income of his estate during her life, bequeathed "after the death of my said wife . . . to my sons M., P., and F., to S. as a trustee upon the trusts hereinafter specified for my son J. and my daughter B., . . . to each the sum of $1,800." He then gave all the residue of the estate "to my said sons M., P., and F., S. as trustee as aforesaid for my son J., my said daughter B. and to my said son F. in trust for . . . my daughter M." The trusts upon which the bequests were made to S. in favor of J. and to F. in favor of M. were specified, but no further mention was made of any trust in favor of B. *Held,* that the word "to" should be supplied in each instance before the words "my daughter B.," and that she took under the will a legacy of $1,800, and one sixth of the residue, free from any trust.

2. The will provided that if J. should leave children surviving at his death the sum held in trust for him should be divided among them, but that if he should die leaving no children then said sum should be divided among the other children of the testator. *Held,* that during the life of J. there could be no binding judgment determining whether or not the will referred only to his death before that of the testator.

3. A codicil made some years later, after reciting the above-mentioned legacy of one sixth of the residue of the estate to the testator's son F. in trust for his daughter M., revoked it and "instead thereof" gave to said M. "in her own right the said one-sixth" of the residue of the estate which should remain after the death of the testator's wife. *Held,* that this was intended merely to turn the trust estate in favor of M. into a legal estate, and that she took thereunder only one sixth of the residue after payment of the several legacies of $1,800 each and the debts and expenses of administration.

4. The estate consisted wholly of personalty, and the testator's widow was entitled under the will to so much of the income thereof as she might require for her own use during her life, the rest, if any, to be added to the principal. The executor held the estate and

Schinz vs. Schinz.

did not file his final account for settlement until shortly after the widow's death, more than seven years after the will was probated. *Held*, that he was entitled so to hold the estate upon the trust implied by law from the will to collect and pay over the income to the widow during her life, and that, not having qualified as testamentary trustee, he held the estate by his title as executor until he settled his final account, and that he was entitled to compensation for his services as executor during that time.

5. The county court may, upon notice as prescribed in sec. 3931, R. S., settle and allow an executor's or administrator's account at any time before the rendition of his final account; and an account thus settled and allowed will be final and conclusive upon all matters embraced in it, and can be impeached or re-opened only for fraud or mistake.

6. Such an allowance of an executor's account, though including extra compensation for his services contrary to County Court Rule XVII, sec. 6, is none the less conclusive and cannot afterwards be avoided for the mere error in practice.

7. The executor in this case having skilfully and successfully managed the estate for more than seven years, collecting, loaning, and re-loaning on mortgage securities the moneys thereof, so that, besides satisfying the provision for the widow and paying the expenses of administration, the estate was increased from about $32,000 to over $48,000, his services were properly considered "extraordinary," and extra compensation, not exceeding the amount allowed him by the testator for substantially the same services rendered in the lifetime of the latter, was properly allowed.

8. The objection that the claim for extra compensation was not set up as a claim in the executor's final account as required by County Court Rule XVII, sec. 2, not having been raised in the county court nor on the trial of the appeal to the circuit court from the allowance, is not available on the appeal to the supreme court.

9. Where no objection was made or exception taken at the trial the supreme court will not review the evidence. It will consider only matters pointed out by exceptions or appearing upon the face of the record proper.

APPEALS from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Separate appeals were taken by *Maria Schinz* and by *John Zentner*, two of the legatees under the last will and testament of Fredolin Zentner, deceased, from the judgment of

the circuit court affirming the judgment of the county court of Winnebago county in probate, construing said will and allowing and settling the final account of *Louis Schinz*, executor, and making distribution of the estate of said deceased. The said will and codicil were admitted to probate October 30, 1883, and November 5, 1883, said *Louis Schinz* qualified as executor, and continued to act as such until the rendition of the judgment of the county court, April 28, 1891. The estate consisted almost entirely of personal estate, notes, and mortgages, and was inventoried at $32,586.73. Both appeals were heard together and upon the same case.

The testator bequeathed to his wife, Barbara Zentner, the use and income of his estate, or so much as, in her judgment, she might require for her own use during her life, the portion not used to be added to the principal and divided after her death; to the testator's sons Meinard, Peter, and Fredolin, to *Louis Schinz*, as trustee, upon trusts specified in the will, for his son *John* and his daughter Barbara, wife of Theodore Schinz, to each $1,800. The rest and residue of his estate he devised and bequeathed to his said sons Meinard, Peter, and Fredolin, *Louis Schinz* as trustee as aforesaid, for his said son *John*, and his said daughter Barbara, and to his son Fredolin Zentner, in trust for the use and benefit of his daughter *Maria Schinz.* "The legacies given to *Louis Schinz* as trustee are given upon the following trusts." A special trust provision follows in regard to the $1,800 and one sixth of the residue for *John Zentner*, by which the interest and income thereof was to be paid by the trustee to said *John Zentner* during his life; and if he should be sick, and it should for that reason be necessary to use any portion of the principal for his benefit, in the judgment of the trustee, he was authorized to make such use as might be necessary on that account, and to provide for his comfort, but not otherwise. "If my said son *John* shall leave any child or children surviving at his death, the interest afore-

said shall be applied by said trustee for their use and benefit while they are minors, and paid in equal shares to those who are of full age, until the youngest shall arrive at the age of twenty-one years, when said principal shall be divided equally among the children aforesaid. If my said son *John* shall die leaving no children, then said principal sum, after his death, shall go to my other children, share and share alike; the children of any such child deceased to take the share of the deceased parent." But no such trust provisions are found in the will in relation to the $1,800 and one sixth of the residue for Barbara Zentner. The codicil to the will recites that by it " one share, being one sixth of the residue of my estate, was given and bequeathed to my son Fredolin Zentner, Jr., in trust for the use and benefit of my daughter *Maria Schinz*, wife of Emil Schinz, during her life, and after her death to her children. Now, therefore, said bequest to Fredolin Zentner, Jr., in trust, as aforesaid, is hereby revoked, and instead thereof I do hereby give and bequeath to said *Maria Schinz, in her own right, the said one sixth of the rest, residue, and remainder of my estate* which shall remain after the death of my beloved wife, Barbara Zentner."

The appellants claim: (1) That no trust was created by the will for Barbara Zentner, either for the $1,800 or for one sixth of the residue of the estate, but that *John Zentner* is the sole beneficiary of the trusts created or attempted to be in *Louis Schinz*, and that the latter takes for the benefit of *John Zentner* $3,600 and two sixths of the residue; and that the trust attempted to be created for Barbara Zentner is void for uncertainty. (2) That *Maria Schinz* is entitled, under the will and codicil, to one sixth of all the residue left after the payment of debts and expenses of administration, and after the death of testator's widow, before the deduction of the several legacies of $1,800 each, already mentioned. The county court denied the contentions of the appellants in these respects, and held, in substance, that, after the death

of the widow, legacies of $1,800 each were to be paid to testator's sons Meinard, Peter, and Fredolin, and to his daughter Barbara, and $1,800 to *Louis Schinz*, as trustee, in trust for *John Zentner*, and that the rest and residue of the estate was to be divided in six equal parts, one sixth to each of the testator's sons and daughters, the sixth part of *John Zentner* to be paid to and held by *Louis Schinz* in trust for him as provided in the will; and distribution was adjudged accordingly.

On the 11th of August, 1887, the executor, *Louis Schinz*, rendered what appeared to be an account of his administration up to that date, but the county court ordered him to file a supplemental account, and allowed him to withdraw the former one, and November 12, 1887, he filed a supplemental inventory and account, in which the executor debited himself with the amount of the inventory and appraisal, $32,586.73, and with interest collected, the most of which had been reinvested, $12,331.34, and he claimed credit for various items, securities on hand, etc., and, among others, for $549.18 commissions, $240 for 240 days' services, and extra compensation of one and one-half per cent. on $38,752, being the average amount of assets on hand, amounting to $2,179.80. At the same time he filed a petition for allowance of his account, stating, among other things, that during his administration he had collected and reloaned $38,587.67, and that the average amount of assets in his hands each year had exceeded that sum; that a large portion of his time since his appointment had "been necessarily employed in the examination of titles, collecting and investing said funds, and in the management of the estate, which, since he has had charge of it, has yielded an income of nearly eight per cent. per annum, or $2,399 in excess of six per cent. compound interest;" that by an arrangement with the testator in his lifetime he acted as his financial agent under an arrangement that he should retain all interest over six per cent. for his

Schinz vs. Schinz.

compensation, and he claimed an extra compensation over specific sums allowed by law of one and one-half per cent. on the average annual amount of the estate in his hands, for the responsibility assumed by him and for skill and extraordinary services attending the execution of his trust. An order for hearing said petition and account was made for a day certain, but no action appears to have been had thereon.

A second and final account up to March 4, 1888, was filed March 17, 1888, showing a balance of assets on hand of $42,329.97. Notice of hearing, with petition for settlement, seems to have been regularly given. An entry in the minute book of the court in this matter, at "special term, April 17, 1888," states, in substance, that there was a hearing of the petition and final account, at which time several of the parties appeared, and "account examined, settled, and allowed up to March 4, 1888, and compensation of executor fixed up to that date." The amount of extra compensation allowed to the executor was $2,377.08. A third account was filed March 23, 1889, and April 5, 1890, a fourth account was filed, but no action seems to have been had on them.

On January 30, 1891, the executor filed his fifth and final account. The appellants filed their objections and complaint, in substance alleging, among other things, in general terms that the charges of the executor for services at the rate of one and one-half per cent. on the aggregate sum of money loaned and invested from time to time were illegal and excessive, and that he should be allowed only the lawful per diem for time occupied in the management of the estate during the necessary period of administration, and the commissions prescribed by statute (R. S. sec. 3929); that his charges for attorney fees were illegal, improper, and unnecessary; and that he should have closed his administration at the end of one year after the probate of the will. The executor traversed these specifications, and insisted on the settlement of his account of April 17, 1888, as *res adjudicata*

and conclusive on his account to March 4, 1888, and upon. his compensation as executor as fixed and settled up to that date; and that such allowance was upon due notice and had. not been appealed from or vacated.

Upon the hearing of the final account the court made a finding reciting the appearance of the parties, and that *Louis Schinz*, the executor, was sworn and examined in open court,. April 22, 1891, and that, after hearing the allegations, proofs of parties, and all the evidence and vouchers, the court found, in substance, that the account of the executor up to· March 4, 1888, was settled at a special term of the court, on. due notice, and the executor was allowed the sum of $2,700 in full for commission and all compensation as executor to· March 4, 1888, and that the balance then remaining in his· hands was $42,572.61; that the amount of property chargeable to him, including $513.60 for accrued interest since January 31, 1891, was $52,393.37; that the amount allowed and to be credited to him since said date, including $50 for attorney's fees and personal services, was $1,514.06, and the residue in his hands was $50,879.31; and, it appearing to the court that said executor had rendered extraordinary service to the estate in investing and looking after the property of. the estate, that he be allowed for his services since March 4, 1888, $2,114.51, leaving in his hands for distribution under the will $48,764.80; and judgment of distribution thereof was given according to the construction given the will.

*John Zentner* and *Maria Schinz* severally appealed to the circuit court from the entire judgment, and in the circuit court the record is that "after hearing *the evidence offered* and arguments," etc., the court affirmed the order and judgment of the county court, with costs, etc., from which the said *John Zentner* and *Maria Schinz* severally appealed.

There was a so-called bill of exceptions, to the effect that. at the trial in the circuit court the complaint and answer· and notice of appeal were read, and "*no testimony, oral or·*

*documentary,* was introduced on the part of either the appellants or respondent, but the action was heard and decided upon the record in said action *by consent of all parties,"* with a certificate of the circuit judge to the same effect; but the bill does not otherwise specify or point out what particular papers, documents, accounts, or other matters are thereby referred to, or contain any exception. The papers transmitted from the county court are bulky and voluminous, consisting largely of accounts, schedules, and statements rendered to that court in relation to the collection of a great many notes and mortgages, and the loaning and reinvestment from time to time of the funds of the estate by the executor.

*John J. McAuliffe,* attorney, and *James G. Flanders,* of counsel, for the appellants.

For the respondent there was a brief by *Bouck & Hilton,* and oral argument by *Gabe Bouck.*

PINNEY, J. 1. The objections made by appellants in their brief against the construction placed upon the testator's will by the county and circuit courts were not pressed in argument, but we have examined them, and arrive at the conclusion that they are not well taken. We do not think that it was intended to create any trust in the will in favor of the testator's daughter Barbara for the sum of $1,800, or for one sixth of the residue of the estate, but that, upon a fair construction, the word " to " is to be supplied after the word " and," in the third and fourth paragraphs of the will, so that she took under it a legacy for $1,800 and one sixth of the residue, free from any trust in *Louis Schinz.* If it can be said that any trust was intended, the will does not state its terms, and it would be but a mere naked, passive trust, which would be valid as to personal estate, and as to real estate would be executed as a legal estate in her favor by force of the statute. Secs. 2071, 2075, R. S. In either

event, the judgment of the county court directing payment of these legacies to Barbara Schinz was correct. The general legacy of $1,800 given by the third clause of the will, and the legacy of one sixth of the "rest, residue, and remainder" of the estate, under the fourth clause, to *Louis Schinz* as trustee of the testator's son *John Zentner*, are the only legacies referred to in the fifth clause of the will as give to *Louis Schinz* as trustee, and they are given to him for *John Zentner* upon the active trusts specified in that clause of the will.

2. The judgment in respect to the bequests in trust for *John Zentner* does not deviate in the least from the plain and unmistakable language of the will, but recites it. *John Zentner* did not predecease the testator, and if he shall leave, when his death occurs, any child or children surviving him, then his interest or his share is to be paid to such child or children, and when the youngest arrives at full age the principal is to be divided equally between them. As *John Zentner* is still living, it cannot be known whether he will die without leaving children. The question whether the time of his death without leaving children, upon which event the principal sum given in trust for him is given to the other children of the testator, refers only to his death before that of the testator, or after (*Washbon v. Cope*, 144 N. Y. 287), is not involved in the case, for there was no one before the court in any position to assert or resist any claim, under either view of that question. The judgment will not, therefore, be conclusive either way, when the question occurs and becomes a practical and material one with proper claimants before the court. Until then the question is a speculative one merely, upon which no binding judgment could properly be given.

3. The testator did not give any general legacy to his daughter *Maria Schinz*, but left to his son Fredolin, in trust for her, "one sixth of the rest, residue, and remainder" of

his estate, after providing for his wife and the payment of the several legacies for $1,800 each. He did not give her any general legacy for $1,800 or any other sum. By the codicil to his will, made about three years afterwards, the testator, after reciting the bequest in trust for his daughter *Maria*, in terms as above quoted, revokes it, and "instead thereof" gives and bequeaths to her "in *her own right the said one-sixth of the rest, residue, and remainder of the estate* which shall remain after the death" of his wife, Barbara Zentner. It is contended that by the codicil *Maria Schinz* is entitled to one sixth of the *corpus* of the estate before payment of the several general legacies for $1,800 each, and debts and expenses of administration. We think that the only effect of the codicil is to turn the trust estate in favor of *Maria Schinz*, under the will, into a legal one, and not to increase her legacy in any amount. Her share in the *residue* under the original will is expressly referred to, and the bequest in the codicil is *to be in her own right and the said one-sixth of the rest, residue, and remainder of his estate,* which clearly refers back to the fourth or residuary clause of the will, although there are added the words, "which shall remain after the death of my wife." No part of the *corpus* of his estate was devised to his wife. She took only such part of the income after his death as she might require, and there could, properly speaking, be no "rest, residue, and re-. mainder" of the estate until the general legacies and debts and expenses of administration were paid. The evident purpose of the codicil was to leave the rights of *Maria Schinz* under the will in the same plight and condition as if no trust provision of the legacy in her favor had been originally incorporated in the will.

For these reasons we are of the opinion that no reversible error occurred in that part of the judgment construing the testator's will.

4. The executor, as such, took the legal title to the entire

estate, it consisting of personal estate, for the purposes of administration. The rights of the widow under the will extended only to such portion of the income of the estate as might be required for her own use, and the rest, if any, was to be added to the principal. The executor was entitled to hold the estate upon the trusts implied by law from the will (*Ford v. Ford,* 70 Wis. 19) to collect and pay over such income from time to time to the widow during her life, and to hold the bequests in favor of *John Zentner* upon the express trusts specified in the will. These trust duties would continue for the contemplated period, although his duties as executor might be sooner terminated. He would, however, continue to hold the estate as executor until he should qualify as testamentary trustee, and as it does not appear that he had so qualified, he held the estate by his title as executor until he settled his final account. R. S. sec. 4025; *Newcomb v. Williams,* 9 Met. 525, 534. It appears that the widow died in January, 1891, and on the 31st of that month the executor filed his final account for settlement. Until after the death of the widow there could be no judgment of distribution, and in the meantime the estate would necessarily remain in the hands of the respondent, to be managed and cared for by him, either as executor or as testamentary trustee; and, in any event, at the reasonable cost and expense of the estate.

5. There was a trial upon issues made up in the county court pursuant to its rules in respect to certain portions of the respondent's final account relating to certain expenses of administration, investment, and management of the estate alleged to be illegal and excessive, namely, an allowance to the respondent for attorney's fees and extra compensation claimed by him in addition to statutory commissions and per diem, with the result set out in the foregoing statement. The record shows that the respondent was examined in open court, and that the court heard the allegations and all the

evidence. The appellants appealed to the circuit court. The statute (sec. 4034, R. S.) provides that on such appeals "the court shall proceed to trial and determination of the matter according to the rules of law, allowing a trial by jury of all questions of fact in cases where such trial may be proper; and such court may direct an issue to be made up between the parties in a brief form, when it shall be deemed necessary." The judgment recites that evidence was heard. The so-called bill of exceptions, which does not contain any exception whatever or any evidence, states that "no testimony, oral or documentary," was introduced, "but the action was heard and decided upon the records in said action *by consent* of all parties." No objection or exception appears to have been taken to anything that occurred at the trial. The record is in no condition to admit of any review of many of the questions argued here. It is no part of our duty to look through all the details of evidence, and examine voluminous documents and accounts, after the manner of courts of original jurisdiction. We can consider only matters pointed out by exceptions, or defects or points appearing upon the face of the record proper. The presumption is in favor of the correctness of the judgment appealed from.

6. It appears upon the face of the judgment of the county court that there had been a settlement of the respondent's account up to March 4, 1888, upon notice, at which one of the appellants was represented by a trustee and the other by her attorneys, who withdrew opposition to the account. It included $2,377.08 for extra compensation, besides $565.56 for commissions. The appellants now claim that this settlement was not final and conclusive upon the matters embraced in it, and that on the hearing of the final account in the county court and in the circuit court they had a right to overhaul that account and contest, as of course, any of the items embraced in it. There is nothing in the record to show that they were denied the right to do so. We have

no doubt of the right of the county court to settle and allow an executor's or administrator's account at any time before the rendition of his final account, upon notice as provided in the statute (R. S. sec. 3931), and that when thus settled and allowed it will be final and conclusive as to all matters embraced in it, and can be impeached or re-opened only for fraud or mistake. Woerner, Adm'n, §§ 504, 505, and cases. in notes. In Massachusetts it is provided by statute that upon every settlement of an account by an executor or administrator his former accounts may be so far opened as to correct any mistake or error therein, excepting that any matter in dispute between two parties, which had been formerly heard and determined by the court, should not be again brought in question without leave of the court. In *Wiggin v. Swett*, 6 Met. 198, SHAW, C. J., said, " The law was substantially the same before the Revised Statutes." The court is cautious to exercise such a power in regard to a subject thus controverted and judicially settled. *Stetson v. Bass*, 9 Pick. 27. See, also, *Gale v. Nickerson*, 144 Mass. 417; *Appeal of Fross*, 105 Pa. St. 258, 268; *Rhoads's Appeal*, 39 Pa. St. 186; *Shindel's Appeal*, 57 Pa. St. 43; *In re Fisher's Estate*, 15 Wis. 511. The allowance of the account up to March 4, 1888, for executor's services, may have been erroneous as having been made contrary to sec. 6, rule XVII, of the county court rules, but it is none the less conclusive. It. cannot now be avoided for mere error in practice.

7. The statute (R. S. sec. 3929) provides that, in addition to the per diem and commission, the executor shall be allowed as compensation such further sums, " in cases of unusual difficulty or extraordinary services, as the court shall deem reasonable." The various lengthy accounts of the executor, and schedules annexed, show the collection, management, loaning and reloaning on mortgage security of the moneys of the estate from time to time for a period of over seven years, by which the estate has been increased from $32,586.73

in the beginning, so that there remained, after satisfying the provision for the widow and all debts and expenses of administration, the sum of $48,764.80 for distribution. These services may be fairly considered to be extraordinary and of a very valuable character. The extra compensation does not appear to exceed the amount allowed the respondent by the testator for substantially the same services rendered for him in his lifetime. The estate appears to have been managed with great skill and prudence, and the respondent deserves credit for his successful conduct of its affairs. The statute contemplates that the court shall exercise its sound discretion on the matter of extra compensation. The question is, "What does the court, in view of the evidence and its own knowledge of the facts, judge reasonable?" *Ford v. Ford*, 88 Wis. 131. The record is in no condition to enable us to say that the allowance was not reasonable in amount.

8. It is urged that no extra compensation should have been allowed, unless the same was set up as a claim in the statement of such final account as required by sec. 2, rule XVII, County Court Rules. This is a matter of practice and does not go to the power of the court, and, had objection been made, it is fair to presume that the rule would have been enforced. Upon the trial of the appeal from the allowance of the executor's account, in which the legality and reasonableness of the amount was in issue, the parties do not appear to have raised this objection, but consented that the action should be heard and decided upon the record. The objection which the appellants seek to make is not open to them on this appeal. The court might properly, under these circumstances, act upon the evidence agreed on and its own knowledge in making the allowance. We perceive nothing in the record to doubt the propriety of the allowance for attorney's fees. The errors or defects in the pleadings and proceedings, relied on, founded on a noncompliance with the rules of practice, do not appear to have prejudiced

the rights of the appellants, and under the statute (R. S. sec. 2829) furnish no ground for the reversal of the judgment appealed from.

There is no reversible error in the record.

*By the Court.*— The judgment of the circuit court on both appeals is affirmed, and the cause is remanded to the county court of Winnebago county for further proceedings according to law.

On June 20, 1895, upon motion of the appellants, the judgment of this court was modified so as to provide that the taxable costs of both parties be taxed against and paid out of the estate of Fredolin Zentner, Sr., but one case and one set of briefs on each side to be taxed.