Argued September 6, reversed September 19, rehearing denied October 16, 1917.

# MATLOCK v. MATLOCK.*

(167 Pac. 311.)

**Divorce—Decree—Res Judicata.**

1. Where in a former decision the Supreme Court in a divorce suit between the parties adjudged that both were to blame for the domestic infelicity, the wife must fail in her suit for separate maintenance as far as it is based upon matters occurring prior to the commencement of the divorce suit.

> [As to divorce suits where both parties have been at fault, see note in 86 Am. St. Rep. 334.]

**Judgment—Res Judicata—Evidence—Divorce Decree.**

2. In a suit by the wife for separate maintenance the testimony in a former divorce suit between the parties was admissible to show the identity of the question involved and its introduction was not a waiver of the right to insist that the divorce suit was *res judicata*.

> [As to *res judicata* as applicable to divorce proceedings, see note in Ann. Cas. 1916D, 875.]

**Husband and Wife—Suit for Maintenance—Evidence—Sufficiency.**

3. In a wife's suit for separate maintenance, *held* that testimony showed nothing occurring since the decision in the former divorce suit between the parties which would justify plaintiff in living apart from her husband.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is a suit by a wife against her husband for separate maintenance. She alleges their marriage April 30, 1911, recites in detail many of the troubles of the wedded life of about nine months, and says that she has been compelled on account thereof to live separate from the defendant without any fault on her part.

The answer traverses all the plaintiff's accusations against the defendant and pleads in estoppel a decree

---

*On right of wife in fault for separation to separate maintenance, see note in 42 L. R. A. (N. S.) 86.

On decree against plaintiff in suit for divorce as bar to subsequent divorce suit, see note in 26 L. R. A. (N. S.) 577. REPORTER.

in a former divorce case between these parties wherein substantially all the allegations in the present complaint were relied upon by this plaintiff and in which this court found that both parties were to blame for the matrimonial difficulties between them and dismissed the suit.    The defendant also pleads in substance that the plaintiff abandoned him, but that after the final decree of the Supreme Court dismissing the former suit on account of the equal fault of both parties, he offered the plaintiff a comfortable home and suitable separate support in Eugene which she declined.    On the printed abstract before us the denials and admissions of the reply are unintelligible because they are phrased with reference to words and lines as they probably appear in the original answer on file in the Circuit Court.    That tribunal refused to be bound by the final decree of this court in the former divorce case deciding that both parties were to blame in their marital disputes, went into the evidence taken in that trial, and concluded the case by a decree in favor of the plaintiff requiring the defendant to pay her $100 a month for her separate maintenance.    The defendant appeals.

REVERSED.   SUIT DISMISSED.   REHEARING DENIED.

For appellant there was a brief over the names of *Mr. John M. Pipes* and *Mr. Lark Bilyeu,* with an oral argument by *Mr. Pipes.*

For respondent there was a brief with oral arguments by *Mr. E. A. Burt* and *Mr. James N. Davis.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The principal question to be determined is the effect of the decree in the suit for divorce.   In the decision

reported, 72 Or. 330 (143 Pac. 1010), the issue between these same parties in that litigation was carefully considered, and it is there stated by Mr. Justice McNARY:

"Believing, from a studious review of the record, that both parties are to blame for their domestic infelicity, a decree for a divorce must be withheld."

This was a direct adjudication that the plaintiff here was not without fault in the disturbance of the marriage relation existing between the parties. This fact was thus conclusively determined as between them and constitutes a datum or landmark controlling them as to all matters in which it was involved up to that time. Either party is thereafter entitled to any legal conclusion which rightly may be deduced from the fact thus established. The fault or innocence of the plaintiff here was directly drawn in question in that litigation, and it was there decided that she was at fault. In *Ruckman* v. *Union Ry. Co.,* 45 Or. 578 (78 Pac. 748, 69 L. R. A. 480), Mr. Justice BEAN lays down the rule thus:

"It is settled law in this state, as elsewhere, that a judgment or decree rendered upon the merits is a final and conclusive determination of the rights of the parties, and a bar to a subsequent proceeding between them upon the same claim or cause of suit, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and had decided as incident to or essentially connected therewith, either as a matter of claim or defense, but that when the action is upon a different claim or demand the former judgment can only operate as a bar or an estoppel as against matters actually litigated or questions directly in issue in the former opinion. This distinction should always be kept in mind in considering the effect of a former judgment or decree. If the second action or defense is upon the same claim or demand, the former judgment is a bar not only as to mat-

ters actually determined, but such as could have been litigated; but, if it is upon another claim or demand, the former judgment is not a bar, except as to questions actually determined or directly in issue''—citing authorities.

Applying this rule to the present juncture, it is plain that the conduct of this plaintiff was of necessity considered in the former litigation and the issue there was decided adversely to her. It must have the same effect in this case between the same parties where the same fact is again directly involved.

The plaintiff asks us to reconsider the testimony in the divorce suit for the purpose of determining anew whether or not she was at fault in the separation of the parties. We answer that we have carefully traversed that path before and that we will not retrace our steps nor make the same journey again. Our conclusion as voiced by Mr. Justice McNARY must stand as a final utterance upon that point, and it must be given its legal effect in this instance between the same parties on the same subject. It being thus established that the plaintiff was at fault in the rupture of the marriage relation she must fail in this suit so far as her contention is based upon matters occurring prior to the commencement of the divorce case for the reason that she must show here that she is living apart from her husband without her fault: *Fowler* v. *Fowler,* 31 Or. 65 (49 Pac. 589); *Ivanhoe* v. *Ivanhoe,* 68 Or. 297 (136 Pac. 21, 49 L. R. A. (N. S.) 86). Other precedents on the matter of estoppel are these: *Harding* v. *Harding,* 198 U. S. 317 (49 L. Ed. 1066, 25 Sup. Ct. Rep. 679); *Cromwell* v. *County of Sac,* 94 U. S. 351 (24 L. Ed. 195); *Miller* v. *Miller,* 150 Mass. 111 (22 N. E. 765); *White* v. *Ladd,* 41 Or. 324 (68 Pac. 739, 93 Am. St. Rep. 732); *Salene* v. *Isherwood,* 74 Or. 35 (144

Pac. 1175); *Colgan* v. *Farmers' etc. Bank,* 69 Or. 357
(138 Pac. 1070); *Campbell's etc. Gas Burner Co.* v.
*Hammer,* 78 Or. 612 (153 Pac. 475); *Loeper* v. *Loeper,*
81 Wash. 454 (142 Pac. 1138); *In re Clifford,* 37 Wash.
460 (79 Pac. 1001, 107 Am. St. Rep. 820); *Averbuch*
v. *Averbuch,* 80 Wash. 257 (141 Pac. 701, Ann. Cas.
1916B, 873); *Kalisch* v. *Kalisch,* 9 Wis. 529.

The fallacy of the plaintiff's argument is that the
issues were not identical and that hence the estoppel
will not result. The issue as to the fault or innocence
of the plaintiff is the same. In both cases it was a
subject of inquiry whether she had been loyal to the
marriage relation in her conduct towards her husband.
The conclusion having been adverse to her on this
point, when the fact was questioned in the former case,
must be the same when the same fact is up for inves-
tigation here. We are not unmindful of the cases of
*Wahle* v. *Wahle,* 71 Ill. 513, and *Umlauf* v. *Umlauf,* 117
Ill. 580, 584 (6 N. E. 455, 57 Am. St. Rep. 880). These
precedents are very ably reviewed by Mr. Chief Jus-
tice WHITE in *Harding* v. *Harding,* 198 U. S. 317 (49
L. Ed. 1066, 25 Sup. Ct. Rep. 679), where he shows that
they are not applicable to a contention like the one at
bar. The essence of the first case is that proof of
fault in one is not evidence of correct deportment in
the other, and in the second it is laid down in effect
that the determination of a question will be deemed
final and conclusive between the parties and their
privies in all future litigations in which the same ques-
tions arise. They, therefore, are not by the mark in
the present contention so as to support plaintiff's
case.

2. Neither is the matter of estoppel waived by the
introduction of the testimony reported in the divorce
case. That was admissible for the purpose of showing

the identity of the question involved and not to retry the issue there raised. On this point it is said in 1 Freeman on Judgments (4 ed.), Section 259:

"The best and most invariable test as to whether a former judgment is a bar is to inquire whether the same evidence will sustain both the present and the former action. If this identity of evidence is found, it will make no difference that the form of the two actions is not the same."

Applying that to the instant suit it can make no difference that the former was for a divorce and the latter for separate maintenance. The same evidence is relied upon by the plaintiff that she introduced there, and the same fact is drawn in question. The result achieved in the first case must be controlling in the second on the same issue.

3. The plaintiff, however, further relies upon an occurrence at Vancouver, Washington, while she lived there separate from her husband, concerning which she charges that he was spying upon an apartment house, in part of which she lived, and was arrested by the police of that city. The version of the matter by her and her witnesses is substantially this: A woman living in part of the house discovered a man looking in at an open window after dark and caused the police to be notified. An officer came and arrested a man whom he found lying down by a shade tree in the vicinity. The officer described him as having a mustache, and other policemen said he pawned his watch with one of them for a dollar with which to procure a night's lodging, and that he was without a collar. After having taken him to the police station he was discharged without further detention. Hearing of the incident a day or two after, the plaintiff carried to the police station a photograph of the defendant made some years before,

in which he appears as having a mustache. The officers concerned in making the arrest at once identified it as a picture of the one they had taken into custody. The woman who discovered the man looking in at the window was a witness at the hearing of this case, and although she had seen that person but for a moment after nightfall she unhesitatingly pronounced the defendant as that individual. The policeman also testified he was the same man, but without the mustache he wore when arrested. The plaintiff left the photograph with the Vancouver police and it was posted in the rogues' gallery of that city. On behalf of the defendant he himself testifies that he was not in Vancouver at the time mentioned or at any time near that; that then and for several years next prior thereto he had been smooth shaven and did not wear any mustache; that on the date when the plaintiff claims these things happened in Vancouver, he was at Eugene in Lane County. He is corroborated in this by entries in his books made at that time and by entries in the books of a tenant who paid him rent on that date, and by the testimony of the tenant himself that he had the transaction with the defendant in Eugene on that date. Other persons who knew him intimately testified that at the time claimed for the Vancouver episode and for several years prior thereto and afterwards, the defendant did not have a mustache, but was smooth shaven. We deem it improbable that a man of the property ascribed to him by the plaintiff in her pleadings would go to Vancouver without money so that he would be compelled to pawn his watch for the pittance of a dollar. In our judgment the great weight of the testimony is against the identity of the defendant with the man arrested in Vancouver. Moreover, no act of violence or threat of the same is ascribed to the de-

fendant in connection with that occurrence.  He does not seem to have violated any municipal regulation there, for the officers discharged him without trial or imprisonment.  Besides all this, conceding that he was the party who was arrested, there is nothing in his conduct any more culpable than that of the plaintiff in rushing to the police station some days afterwards and causing him to be posted in the rogues' gallery. In short, the testimony shows nothing occurring since the decision of the former divorce case that would justify the plaintiff in living apart from her husband, nor overcome the estoppel worked out by the decision of this court that she in common with the defendant here was to blame for their matrimonial infelicities.

The conclusion is that the decree of the Circuit Court is reversed and the suit dismissed.

REVERSED.   SUIT DISMISSED.   REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BENSON and MR. JUSTICE McCAMANT concur.