Argued May 5, affirmed July 3, petition for rehearing denied
August 13, 1952

## WEATHERSPOON *v.* WEATHERSPOON
246 P. 2d 581

*E. R. Ringo,* of La Grande, argued the cause and
filed a brief for appellant.

*George T. Cochran,* of La Grande, argued the cause for respondent. On the brief were Cochran & Eberhard, of La Grande.

Before Brand, Chief Justice, and Hay, Latourette, Warner and Tooze, Justices.

BRAND, C. J.

The plaintiff, Luella B. Weatherspoon, brought this suit for divorce on account of alleged desertion against the defendant Fred W. Weatherspoon. The complaint alleges that the defendant:

"* * * has been guilty of desertion of this plaintiff for more than one year last past, viz: that on the 27th day of March, 1950, the defendant drove the plaintiff from the home of the parties in La Grande, Oregon, and ever since said time has refused to allow the plaintiff to return to said home, and during all of said time has failed and refused to support this plaintiff and their said two minor children, and that he still refuses; that plaintiff and defendant have not lived or cohabited together since said separation, and are now living separate and apart; that all of said conduct of defendant was against the will and consent of plaintiff and without cause or provocation."

The allegations of desertion are denied by the answer. After trial of the issues the circuit court awarded to the plaintiff a decree of divorce together with custody of the two minor children of the parties and ordered the defendant to pay support money for the children and attorneys' fees. The plaintiff's case rests upon the legal theory of constructive desertion. It has been generally held that if a husband, by his misconduct or wrongful acts toward his wife, compels her

to leave home, it constitutes in law a desertion of her by him. The rule is exhaustively treated by the editors in 19 ALR2d et seq., where it is said at page 1434:

"It is a settled rule that where a wife is compelled to leave or is justified in leaving the home on account of the husband's cruelty the separation constitutes a legal desertion on his part."

From page 1436 of the same treatise we quote:

"The courts of many jurisdictions, recognizing that the spouse remaining home whose acts or omissions have caused the other spouse to leave the home may be guilty of desertion entitling the other spouse to a divorce therefor, call such desertion by the spouse remaining home 'constructive desertion'."

Among many other cases cited in support of the text, we find *Thomsen v. Thomsen*, 128 Or 622, 275 P 673. In that case this court said:

"* * * It is the husband's duty to furnish a home, wherein the wife is free from ill treatment and unwarranted interference from members of other households. When such a home is not provided, the wife is justified in leaving, and in so doing is not guilty of desertion, but may charge the husband with constructive desertion * * *."

■ Before discussing the evidence on the issue thus presented, we will notice certain assignments of error found in appellant's brief. It is asserted that the court erred in overruling the defendant's motion to strike parts of the complaint. The refusal to strike did not, in a case of this kind, constitute reversible error. The second assignment is to the effect that the court erred in overruling appellant's objection to the introduction of evidence in behalf of the respondent. This is an equity suit. The assignment is too indefinite, and if any evidence was improperly received, this court will

disregard it. The assignment is without merit. The last assignment is that the court erred in overruling defendant's motion for dismissal of the suit on the ground that the complaint failed to state facts sufficient to constitute a cause of suit. We deem it unnecessary to set forth the entire complaint, but are of the opinion that it states a cause of suit for constructive desertion.

The evidence establishes that the separation commenced on 27 March 1950. Immediately thereafter the defendant sued his wife for divorce, whereupon she filed a cross complaint against him seeking a decree in her favor. The trial court denied a divorce to either party and counseled the parties to "try to get back together." The evidence concerning the circumstances leading up to the separation of 27 March 1950 is in direct conflict. The testimony of the plaintiff, which we shall now review, was categorically denied by the defendant. The trial court heard the witnesses and observed their demeanor and accepted the plaintiff's version of the facts. Weighted, as her testimony is, by the favorable finding of the trial court, we shall accept it as true in the essential particulars.

The pending suit was filed on 20 August 1951, more than one year after both the separation and the decree in the first divorce case. The plaintiff testified that she had been a faithful wife and a good mother, and the testimony of other witnesses confirms her evidence, particularly with respect to her conduct and the care which she has given to her children since the separation. The evidence establishes that on the night of 25 March 1950, the plaintiff, after a lodge meeting, was in a restaurant, together with a married couple and a certain Marvin Lewis, who was a friend of both the plaintiff and the defendant. The evidence establishes

that there had been some drinking. On that night the defendant, who was a railroad brakeman, was called from his bed to a tour of duty, and on his way to work, stopped in at the restaurant where he observed the plaintiff and claims to have seen her and a Mr. Lewis "just finishing a very close embrace." This is denied by the plaintiff. The defendant called the plaintiff out, and they had a talk outside the restaurant. Defendant asked the plaintiff what she was doing in the restaurant. She testified:

"A  *  *  * I told him the Hustons had been with me, or I with them, all evening and Marvin was taking them out to eat and they asked me to go along.

"Q  And that is all he said?

"A  Well, he wanted to know who was with the the kids at home and told me not to go home. He said, 'Don't you ever enter that house.' I told him I was going to."

The defendant returned from his duty on Monday, March 27. According to his own testimony he returned to the home of the parties at about 4:30 a. m. We quote:

"A  *  *  * I called her out of bed there, and asked her what the big idea was, and asked if we couldn't get this thing settled.

"Q  Go ahead and tell what took place.

"A  She took a defiant attitude about it. We argued quite a while about it. I finally got disgusted and went to bed."

The plaintiff's testimony is to the following effect:

"A  He jerked me out of bed, throwed cold water on me, tore the blanket up, the bed spread.

"Q  Hit you?

"A  Yes.

"Q What did he do?

"A He kicked me on the leg, busted the skin so I had to go to a doctor; he took care of it for me the last time; he cut the skin with his finger nails. I had scars for a long time.

"Q How about black and blue spots?

"A I had black and blue spots too.

"Q What did he do about the telephone?

"A He disconnected that before he started.

"Q What did he do about the kids, the son and daughter?

"A He kept them in the house, locked the door so they couldn't get to the neighbors' telephone.

"Q Did they start?

"A Yes.

"Q What did he do about that?

"A He run and caught them and brought them back.

"Q He run and caught them and brought them back?

"A Yes."

■ The mother of the plaintiff, as a witness, gave testimony concerning the condition of the plaintiff on the following day, which confirmed the plaintiff's testimony as to the nature of her injuries. Plaintiff testified that after this occasion she was afraid to return to the home of the defendant "because he beat me up any number of times." Concerning the violent disposition of the defendant, we are fully convinced. The testimony of the plaintiff and of her corroborating witness is met on the defendant's part by his admission that he "called her out of bed" at about 4:30 in the morning. He then contented himself when asked if he had beaten her by answering, "No." We find that the defendant did administer a beating to his wife. Under

these circumstances, plaintiff was justified in leaving the home and continuing the statutory separation for a period of one year.

On the three occasions on which the parties met and discussed the possibility of a reconciliation, nothing happened to give the plaintiff any assurance that marital life could be peacefully resumed. The various conditions imposed by the defendant were that the plaintiff give up her lodges and "stay strictly to home", and that the defendant should "be the boss." The generation which adhered to the old legal maxim that husband and wife are one, and the husband is that one, has long since been gathered to its fathers. We cannot subscribe to a doctrine of female inferiority in the partnership of marriage.

It must be conceded that plaintiff's devotion to her lodge affiliations was carried to an enthusiastic, if not an obstinate extreme, and that her general conduct during the early hours of the morning at the restaurant with Mr. Lewis was at least indiscreet. We do not condone such conduct, although, it may be added that the drinking of intoxicating liquor is lawful in Oregon and that similar indiscretions at all levels of the so-called social scale are frequently met with a smile or a shrug. It is only when dramatically brought out in the course of litigation that the indiscreet becomes the sinister.

■ The award of a divorce to the plaintiff is authorized under the more recent rulings of this court which hold that a party may be granted a divorce in a proper case, although not wholly free from fault. If the conduct of the defendant was unjustified by the provocation and out of proportion to any offense of the plaintiff; that is to say, if the parties were not in pari delicto, a divorce may be granted to the one less at fault. *Condit*

*v. Condit,* 115 Or 481, 237 P 360; *Mueller v. Mueller,* 165 Or 153, 105 P2d 1095; *McElwee v. McElwee,* 171 Or 462, 138 P2d 208; *Fuller v. Fuller,* 175 Or 136, 151 P2d 979; *Fritz v. Fritz,* 179 Or 612, 174 P2d 169.

Applying the rule laid down in the cases cited, we hold that the plaintiff, though somewhat at fault, was entitled to a decree of divorce on the ground of constructive desertion for a period of one year. There was no justification for the physical violence of the defendant. A man cannot beat his wife and then when she leaves home, complain that she should have manifested a more ardent desire to return. His repeated warnings that if she returned she must remember that he was the boss, fall far short of any assurance on which she could rely.

Considerations suggesting the advisability of greater judicial restraint in applying the doctrine of clean hands in divorce suits are presented in a dissent of the writer in *Evans v. Evans,* 176 Or 403, 157 P2d 495, but the application of those considerations is unnecessary in the case at bar. The decree of the circuit court is affirmed.