Leula MORGAN, Respondent,

v.

Robert MORGAN, Appellant.

No. 22215.

Kansas City Court of Appeals.

Missouri.

May 2, 1955.

Frances G. Hale, Robert E. Coleberd, Liberty, for appellant.

James S. Simrall, Jr., Liberty, Ruby Garrett, Kansas City, for respondent.

BROADDUS, Judge.

This is an action for divorce in which plaintiff, Leula Morgan, was granted a decree. She was also awarded alimony in gross in the sum of $4,500, an attorney's fee of $250, and $50 suit money. Defendant, Robert Morgan, appealed.

The parties were married on June 4, 1933, and this is their second divorce case. On September 9, 1950, Robert sued Leula for divorce. His petition alleged indignities. Leula filed an answer. She also filed a cross-petition in which she alleged that Robert had been guilty of such indignities

as to render her condition intolerable "in this, to-wit: (3) That plaintiff on three different occasions has threatened to kill defendant; that he has struck, kicked and beaten defendant; that he has threatened to mutilate her face; has threatened to cut her throat and to chop off her head; that because of these threats and beatings she, on three occasions, was forced to leave the plaintiff; that she went back to him on his express promise to cease doing the things that had caused the separations. (4) That plaintiff has told neighbors and mutual friends that he would never permit defendant to receive any of his money or property; that he would kill her first and would kill himself." The case came on for trial and the court, on February 22, 1951, denied either party a decree.

On June 26, 1953, the present action was commenced by Leula filing a petition for separate maintenance against Robert. He answered her petition and coupled with it a cross-petition for divorce in which he alleged that on or about September 9, 1950, plaintiff (Leula) "abandoned and deserted defendant and has since that time absented herself continuously, and without reasonable cause therefor * * *."

Leula answered Robert's cross-petition and then on February 17, 1954, filed an "Amended Petition for Divorce." In the latter she alleged the date of the marriage; that she continued to live with defendant until September 9, 1950; that on the latter date he instituted the previous divorce proceeding which "was heard by the court and judgment rendered on February 22, 1951, and the court by its decree denied defendant's petition." She then alleged: "That after said divorce proceeding the defendant refused to permit plaintiff to reside in property owned by plaintiff, and has failed and refused to provide plaintiff any money for her support and maintenance; that defendant has collected all of the rentals from his property and refused to pay over to plaintiff any of such sums; (4) That defendant has failed and refused to provide support and maintenance for this plaintiff although plaintiff is completely and entirely dependent upon defendant for such support and maintenance; (5) The defendant has refused to provide a home or support plaintiff for more than one year next before the filing of this petition and has, therefore, deserted plaintiff."

Defendant makes three points in his brief. The first being that plaintiff's "claimed cause of action has theretofore been finally and adversely adjudicated in a former action between the same parties involving the same subject matter."

■ That the defendant did not take this position at the trial is shown by the following which appears in the transcript. Defendant's counsel stated: "If the Court please, the issue of desertion, which is the *only issue* before the Court here, is who deserted who. *It was not litigated in the prior case. There was no issue of it made by the pleadings at all.*" Later on in the transcript the following appears. Plaintiff's counsel, referring to the pleadings in the previous case, said: "The grounds alleged were not desertion and that is the ground alleged both in the plaintiff's petition and the defendant's cross-petition in the present case so there certainly was no adjudication of that particular ground * * *." Thereupon, the Court, addressing defendant's counsel, said: "I can't see where it does. That was adjudicated in 1951. The only basis in this petition, as I understand it—the decision in 1951, I don't think, would determine the matter of desertion now." To which defendant's counsel replied: *"I don't contend it would."*

In addition to the above there is another basis for our view that defendant's *present* contention lacks merit. It is shown by the holding of this court in the case of Sutermeister v. Sutermeister, Mo.App., 209 S.W. 955, 956. In that case the plaintiff, the wife left the defendant husband and sued for divorce on the ground of indignities. He filed a cross-bill. The court refused a divorce to either party. The parties remained apart for about two years. Then the wife again brought suit for divorce. Her amended petition alleged two grounds, one indignities, the other desertion; the first consisting of brutal treatment. In discussing de-

fendant's claim of res adjudicata this court said:

"Defendant seeks to avoid the effect of the evidence that he forced plaintiff from the home by his treatment of her by calling attention to the fact that the trial court found in the first action for divorce that he had not been guilty of conduct sufficient to give her a right to a divorce, nor to justify her in leaving the home, and that such matter was therefore res adjudicata in the present action. The position is not sound, nor is it founded on fact. In the first action the trial court found that defendant's misconduct did not justify a divorce to plaintiff, but it did not decide that such misconduct did not justify her in leaving home. The two propositions are not the same, nor are they alike; for it is held that the conduct of the husband towards his wife may be such as to warrant her in leaving him, although such conduct might not entitle her to a divorce."

■ Defendant's next contention is that plaintiff's "amended petition does not state a cause of action for divorce on the ground of desertion, or otherwise." Defendant made no attack upon it until *after* judgment.

Referring to plaintiff's petition defendant in his brief says: "The allegation 'and has therefore, deserted plaintiff' is a mere conclusion of the pleader and not a statement of an ultimate fact." That is true, but it raised the issue upon which the case was tried.

In the case of Slaughter v. Slaughter, 106 Mo.App. 104, 80 S.W. 3, 4, this court had before it a petition in a divorce case which was "unquestionably defective" because the allegation therein was "in the nature of a conclusion of law". In holding the petition good after judgment this court said: "It is the law of this state that 'an issue raised on the statement of a legal conclusion which presents the real point in controversy will be regarded as sufficient after verdict.'" The ruling in the above case was later approved by this court in the cases of Rudd v. Rudd, 223 Mo.App. 472, 475, 13 S.W.2d 1082, 1084, and Schuchman v. Roberts, 234 Mo.App. 509, 516, 133 S.W.2d 1030, 1034. That the "real point in controversy" in the instant case was the issue of desertion is beyond dispute. As defendant's counsel put it, *"the issue of desertion, which is the only issue* now before the Court here, is who deserted who."

Section 509.500 of our statutes, 1949, V.A.M.S., also bears upon the question. That section provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary * * * to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues."* We rule the point against defendant.

Defendant's last contention is that plaintiff's evidence failed to show any ground for divorce.

Plaintiff testified that defendant many times threatened her with violence. She stated that she could not return to him after he "has threatened to kill me as many times as he has"; that at one time she "asked him about moving down to the house he had built and it was vacant. He said, I wouldn't dare to—I would be sorry if I tried it." Her proof also showed that defendant refused to furnish her with any money for her support; that on one occasion she was sick and confined to bed for a period of five weeks; that plaintiff's sister asked defendant if he would send some money to buy medicine and help pay plaintiff's doctor bill; that defendant said "he would not, he would see her dead before he would give her any money in any way."

Defendant admitted that "since February of 1951," he had not given plaintiff any money for her support. He was asked: "And you haven't asked your wife to come back— A. No, sir. Q. —since Febru-

ary of 1951. Has she asked to come back? A. Her sister asked for her, called me on the 'phone, wanted me to let her come back and I told her, 'No'."

■ Our conclusion is that the instant case falls within the rule announced many times by our appellate courts that, in divorce suits, great deference should be paid to the finding of the trial court who had the parties and witnesses before him and was in a much better position to judge of their credibility than is this court.

■ We defer to the conclusion reached by the trial court that plaintiff made a case on the ground of desertion and affirm the judgment.

MAUGHMER and WEIGHTMAN, Special Judges, concur.

DEW, P. J., and CAVE, J., not participating.