Submitted on briefs October 11, affirmed November 14, 1956

# LEAHY *v.* LEAHY

303 P. 2d 952

Leo Levenson and Phillip J. Roth, Portland, for appellant.

Meindl, Mize & Kriesien, Portland, for respondent.

TOOZE, J.

This is a suit to obtain a decree of separation from bed and board on the ground of willful desertion, brought by James P. Leahy, as plaintiff, against

Marilyn A. Leahy, as defendant. Defendant filed a cross complaint for divorce upon the two separate grounds of cruel and inhuman treatment and willful desertion for a period of one year. The trial court dismissed the complaint and awarded a divorce to the defendant; plaintiff appeals therefrom.

The parties to this suit are young people, having been married on February 14, 1953, and no children were born of said marriage. On July 16, 1953, defendant left plaintiff, returned to her parents' home, and has lived there continually since that date. Defendant commenced a suit in the circuit court for Multnomah county to obtain a divorce on the ground of cruel and inhuman treatment on April 1, 1954. A trial was held before Judge Virgil H. Langtry, who on October 27, 1954, signed and caused to be entered of record a document entitled "opinion," wherein it was stated that the parties were in pari delicto and that the complaint and cross complaint are therefore dismissed.

Plaintiff on March 21, 1955, commenced this suit for separation from bed and board. On April 13, 1955, defendant moved to vacate the decree of October 27, 1954, and reopen the original case. Plaintiff opposed this motion on the grounds that the so-called opinion of October 27 was, in truth, the final decree of the court, and that the court was without authority to vacate the decree after the term at which it was rendered. Judge Langtry denied the motion. On June 7, 1955, despite his denial of this motion, the trial judge signed and recorded another document dismissing the original suit, which was entitled "Judgment."

On July 22, 1955, defendant filed her cross complaint in the instant suit, asking for a decree of divorce in her favor on the ground of willful desertion for a period of more than one year. On October 26, 1955, a

decree was entered dismissing the plaintiff's complaint and granting a divorce to defendant. The only question for determination on this appeal is whether the divorce should have been granted.

Plaintiff contends that the decree in the prior suit is res judicata as to defendant's right to a divorce in this suit. We stated the general doctrine of res judicata in *Wagner v. Savage, as Adm'r,* 195 Or 128, 146, 244 P2d 161, as follows:

> "The law is well established that a final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand, and cause of action. However, if the two suits do not involve the same claim, demand, and cause of action, such effect will not ordinarily be given to the prior judgment. *To give such effect, there must not only be identity of subject matter, but also of the cause of action, so that a judgment in a former action does not operate to bar the subsequent action, where the cause of action is not the same, although each action relates to the same subject matter.*" (Italics ours.)

Also see *State v. Dewey,* 206 Or 496, 504, 292 P2d 799.

With respect to res judicata, two questions are involved:

> (1) Is a suit brought on the ground of cruel and inhuman treatment a bar to a subsequent suit brought on the ground of constructive desertion, when the facts tending to prove the desertion are some of the same facts, which were proved or could have been proved in the prior suit to show cruel and inhuman treatment?
> (2) Does a decree determining that the parties

are in pari delicto with reference to a complaint and cross complaint for divorce on the ground of cruel and inhuman treatment necessarily determine that the defendant was herself at fault for the resulting separation, and thus prevent her from now claiming that the plaintiff's acts amounted to constructive desertion?

■ The prior adjudication with reference to the question whether the defendant is entitled to a divorce on the ground of cruel and inhuman treatment is not and could not have been an adjudication of the question whether she has a cause of action on the ground of desertion.

The several grounds for divorce are set forth in the statute as separate and distinct causes of action. ORS 107.030 states:

"The dissolution of the marriage contract may be declared at the suit or claim of the injured party for any of the following causes:

"* * * * *

"(5) Wilfull desertion for the period of one year.

"(6) Cruel and inhuman treatment or personal indignities rendering life burdensome."

■ Not only are the formal causes of action totally different, but the elements of each are entirely different. To prove cruel and inhuman treatment, the claimant must prove only the acts of cruelty, and that such acts rendered life burdensome; but to prove constructive desertion, the claimant must prove the acts causing the separation, must prove that the desertion has continued for more than one year, and that no sincere efforts of reconciliation have been made by the one

whose acts caused the separation. Because a cause of action for desertion requires the lapse of a period of one year, defendant could not have presented the ground of desertion in the prior case, for on April 1, 1954, when her complaint was filed in that suit, only eight and one-half months had elapsed since the separation.

■ If defendant had relied upon constructive desertion in the prior suit, the result would have been a dismissal of her complaint, but such dismissal would not have been res judicata to another suit after the time had elapsed. This occurred in *Hewitt v. Hewitt*, 120 W Va 151, 152, 197 SE 297, where the Supreme Court of West Virginia said:

> "* * * The demurrer was correctly sustained to the husband's cross-bill in the separate maintenance suit because at the time of the filing of the cross-bill, the statutory period of two years had not elapsed. Therefore, there is no basis for Artie J. Hewitt's contention in the present case that the question of desertion stands *res judicata.*"

The Nevada Supreme Court also considered this question in *Sweet v. Sweet*, 49 Nev 254, 259, 243 P 817. The court said:

> "It is obvious that there is no identity between a cause of action for divorce for cruelty and a cause of action for a divorce for desertion. They form separate and distinct issues governed and controlled by different rules of evidence, and each constitutes a separate and distinct statutory ground for divorce under the laws of both Connecticut and Nevada. The fact that the plaintiff's former suit for intolerable cruelty was dismissed for insufficiency of proof is no bar to the present action for desertion, even though the defendant's acts and conduct were of such nature as to cause the separation."

The question was again considered by the Tennessee Supreme Court in *Copeland v. Copeland,* 180 Tenn 609, 610, 177 SW2d 555, where the court stated:

"It appears from the plea that the complainant had previously brough a suit against defendant for a divorce in the circuit court of Fentress County charging her with cruel and inhuman conduct and adultery. She answered the bill, proof was heard, and the circuit judge dismissed the suit. It is true that in this bill a charge of willful and malicious desertion was made, stating that it began on June 17, 1941. The circuit court bill, however, was filed in December, 1942, and a judgment rendered in that court on April 13, 1943. Willful and malicious desertion, therefore, was not and could not have been an issue in that case since two years had not elapsed even at the disposition of the case. So it follows the former judgment cannot be pleaded as *res judicata* in this suit in so far as it is based on willful and malicious desertion for two whole years."

■ We conclude, therefore, that the prior suit on the ground of cruel and inhuman treatment is not a bar to the present suit on the ground of willful desertion. This conclusion, however, and the above authorities do not answer the contention of plaintiff that the former adjudication that the parties were in pari delicto bars defendant's present suit based upon the theory of constructive desertion. In support of his contention plaintiff cites *Matlock v. Matlock,* 86 Or 78, 167 P 311. Some of the language used in that case would seem to support the position taken by the plaintiff, but upon close examination of the factual situation involved it is found that there is a distinction to be drawn between that case and the one now before us. The first Matlock case was one in which both plaintiff and defendant asked for divorce upon the grounds of

cruel and inhuman treatment, and the cruelty involved on both sides was "mental," rather than "physical," cruelty. In the instant case, the charges of cruelty in the first suit were based in part upon physical violence on the part of the husband, and mental cruelty on the part of the wife. The first Matlock case was dismissed by the Supreme Court under the in pari delicto doctrine. *Matlock v. Matlock*, 72 Or 330, 331, 143 P 1010. Mr. Justice McNARY said: "When the conduct of the parties is reprehensible to *a kindred degree* the court ought not to interfere at the instance of the other." (Italics ours). "Kindred" means of like nature or properties. In the Matlock case the alleged cruelty on both sides was of the same type, viz: acts of mental cruelty. Therefore, in considering the decision in the second Matlock case (86 Or 78, 167 P 311) upon the question of res judicata, it must be viewed in the light of the factual situation, and the holding based thereon, of the first case. It must be deemed to refer to situations where, on the first case, the parties were each found guilty of a similar type and degree of cruelty. It cannot refer to a situation where on the one side "mental cruelty" only is involved, and on the other side "physical cruelty" is charged. The two types of cruelty are not "kindred."

In the instant case the parties have been in court twice; they have testified against each other in public; they have admitted publicly matters of their own private concern. The defendant has testified that she has no further love for the plaintiff because of his acts, that she could not return to him, and that she is afraid to live with him. In the Matlock case the parties were not in the circuit court twice, as in this case, but they were in the Supreme Court three different times. *Mat-*

*lock v. Matlock,* supra; 72 Or 330, 143 P 1010; 87 Or 307, 170 P 528.

The factual situation in the instant suit is very similar to that present in *Weatherspoon v. Weatherspoon,* 195 Or 660, 246 P2d 581. The defendant in that case had previously sued his wife for divorce, and she had filed a cross complaint for divorce. The trial court denied a divorce to either party. The plaintiff then sued for divorce on the ground of constructive desertion, which had occurred prior to the first case but less than one year prior. In affirming the decree of divorce Mr. Justice BRAND, speaking for the court, said:

> "Applying the rule laid down in the cases cited, we hold that the plaintiff, though somewhat at fault, was entitled to a decree of divorce on the ground of constructive desertion for a period of one year. There was no justification for the physical violence of the defendant. A man cannot beat his wife and then when she leaves home, complain that she should have manifested a more ardent desire to return. His repeated warnings that if she returned she must remember that he was the boss, fall far short of any assurance on which she could rely."

The Kansas City Court of appeals, a Missouri intermediate appellate court, has considered this question in two decisions. *Morgan v. Morgan,* 278 SW2d 809 (Mo), and *Sutermeister v. Sutermeister,* 209 SW 955, 956 (Mo). In the Morgan case the court quoted with approval the following from the Sutermeister case:

> "Defendant seeks to avoid the effect of the evidence that he forced plaintiff from the home by his treatment of her by calling attention to the fact that the trial court found in the first action for divorce that he had not been guilty of conduct

sufficient to give her a right to a divorce, nor to justify her in leaving the home, and that such matter was therefore res adjudicata in the present action. The position is not sound, nor is it founded on fact. In the first action the trial court found that defendant's misconduct did not justify a divorce to plaintiff, but it did not decide that such misconduct did not justify her in leaving home. The two propositions are not the same, nor are they alike; for it is held that the conduct of the husband towards his wife may be such as to warrant her in leaving him, although such conduct might not entitle her to a divorce.''

It would be absurd to hold that defendant *has a cause of action* on the ground of willful desertion, wholly separate and distinct from a cause of action on the ground of cruelty, and hence is not barred by the prior case, and at the same time hold that she cannot *prove this cause of action* because the prior case held that plaintiff, too, had grounds for divorce on the theory of cruelty. There is necessarily a difference between the determination of who caused the separation, the primary issue in this case, and the determination that each was guilty of cruelty, as found in the prior case, for the same acts may be equally cruel, but not equally tending to drive the other spouse from the home. Upon the question of whose wrongful acts actually caused the separation, the type of cruelty involved may be important. In the first case the question of whose misconduct caused the separation was not, and could not, be determined. It was not an issue in that suit.

■ Although it appears that upon the trial of the first case the plaintiff herein, the defendant in that suit, offered some evidence as to cruel and inhuman conduct upon the part of his wife toward him; neverthe-

less, upon the trial of the instant suit, no evidence was produced. There was ample evidence introduced by the defendant herein as to plaintiff's misconduct, which evidence stands largely, if not wholly, uncontradicted. The record strongly supports the conclusion of the able and experienced trial judge that plaintiff's wrongdoing was the cause of the separation.

■ Plaintiff also contends that he could not have been guilty of desertion because the year had not expired at the time the cross complaint was filed. In support of this contention, plaintiff argues that the eight and one-half months period prior to the former suit cannot be tacked to the time elapsing since the entry of a decree in that suit. He cites *Luper v. Luper,* 61 Or 418, 96 P 1099, as authority for this proposition. That case is not in point, because there the two periods of desertion were interrupted by cohabitation. In the instant case the parties did not cohabit after July 16, 1953, the date of the original desertion; the interruption of the running of the year was due to litigation and not to cohabitation. They have lived separate and apart continuously since July 16, 1953.

In *Hewitt v. Hewitt,* supra, at page 153, the Supreme Court of West Virginia held:

"* * * But the query arises whether there thus may be deduction of time of pendency of the prior suit, or whether the institution of the prior suit had the effect of destroying any benefit which the party claiming to have been deserted would be entitled to because of the months of separation which had already passed.

"* * * * *

"* * * In the case of Vickers v. Vickers, 95 W.Va. 323, 328, 122 S.E. 279, 41 A.L.R. 266, the

court, in discussing the then three-year desertion statute, said: 'But the abandonment must be continuous for three full years.' This broad statement applies without limitation where, after separation has continued for a time, the parties effect a reconciliation which is destroyed by the second desertion by the spouse who had initially deserted. In such situation the innocent party, having condoned the first desertion, cannot take into account the time which had elapsed during the first desertion in order that it may be included as a portion of the requisite statutory period. But the general rule is that where there has been no condonation of the initial desertion, the institution of an unsuccessful divorce or separate maintenance suit does not destroy for the abandoned party the benefit of the time which had elapsed from the date of separation to the institution of the unsuccessful suit. Numerous courts of last resort have dealt with this proposition, and have reached the conclusion here stated. Wagner v. Wagner, 39 Minn. 394, 40 N.W. 360; Craig v. Craig, 118 Va. 284, 87 S.E. 727; Woodward v. Woodward, 122 Fla. 300, 165 So. 46; Hartpence v. Hartpence (N.J. Ch.), 121 Atl. 513. These cases make it clear that where the initial suit was not in good faith, there is no suspension of the statutory desertion period; and where the suit was in good faith the extent of the interruption was merely for the time covered by the pendency of the suit."

If the decree in the prior case was in fact entered on June 7, 1955, instead of October 27, 1954, then, as now contended by plaintiff, the prior case was actually pending until only six weeks before the cross complaint was filed July 22, 1955. The original period of eight and one-half months, plus these six weeks, would be a desertion of only ten months. But if, as we find, the final decree was actually entered on October 27, 1954, the period of desertion exceeds the required year.

The document of October 27, 1954, is as follows:

"IN THE CIRCUIT COURT OF THE STATE
OF OREGON
"FOR THE COUNTY OF MULTNOMAH

"MARILYN A. LEAHY,        )
                          )
              Plaintiff,  )   No. 217 760
                          )
       –vs–               )   O P I N I O N
                          )
JAMES P. LEAHY,           )
                          )
              Defendant.  )

"Plaintiff and defendant are young people, who were married in February, 1953, and lived together for only about five months thereafter. Their marriage was stormy and apparently marked by frequent quarrels which sometimes carried over into slight physical altercations. In periods of violent emotional upset it is apparent that the defendant did exercise some physical violence toward his wife. On the other hand it is apparent that she provoked by unusually provocative conduct such violence on the part of the defendant. The Supreme Court of Oregon has on some occasions stated that there is no justification for a husband using violence toward his wife. Aside from the violence mentioned by the Court, it is difficult from the testimony to find very much substantiated with reference to the claims that the wife makes against the husband. The use of physical violence is under specification (3.) of cruel and inhuman conduct in the plaintiff's complaint. With reference to specifications (1.) and (2.) the Court feels that the plaintiff's proof has failed. However the proof with reference to the third (3.) specification would at least be sufficient to establish a prima facie divorce case in favor of the plaintiff against the defendant.

"On the other hand, the Court was struck with the sincerity of the defendant's testimony and is

satisfied that he has sustained the major part of his allegations in the cross-complaint with reference to the plaintiff's being extremely difficult to live with, her criticism and scolding of him, her non-co-operativeness with reference to money matters, her failure to cooperate in household duties, her walking out on the defendant at times of quarrels, her rediculing [sic] of the defendant's family and her refusal to cooperate in the usual sex relations of marriage.

"Thus, it appears to the Court that each has proven a cause for divorce against the other and the Court, although it has reviewed the testimony over and over again, can not affirmatively say that the fault of one over-balances that of the other. In this state of the record, under the law recently reiterated by the Oregon Supreme Court, this Court must conclude that neither of the parties is entitled to relief in this Court under the in pari delicto rule.

"The complaint of the plaintiff and the cross-complaint of the defendant are accordingly dismissed.

"DATED this 27th day of October, 1954.

"(Sgd.)  Virgil H. Langtry
Circuit Judge."

When this document is compared to the document of June 7, 1955, the two are found to differ in the following respects: (1) the first is entitled "opinion," while the latter is entitled "judgment"; (2) the first does not refer to costs, while the latter states: "without costs to either party"; (3) in place of "The complaint of the plaintiff and the cross complaint of the defendant are accordingly dismissed," the document of June 7 states in the usual form "IT IS HEREBY ORDERED, ADJUDGED, AND DECREED by the court that the complaint of the plaintiff and the cross-complaint of the defendant be accordingly dismissed."

Both documents were signed by the trial judge. Everything else contained in the ''judgment'' is contained in the ''opinion,'' although the so-called ''opinion'' contains findings of the trial judge not appearing in the ''judgment.''

With regard to the question whether an opinion can constitute a judgment, it is stated in 30 Am Jur 824, Judgments § 9:

''The opinion of a judge upon matters submitted, whether oral or in writing, does not necessarily form a part of the judgment proper. The opinion, ordinarily, represents merely the reasons for the judgment. Indeed, a judgment may be entirely sound, although the grounds upon which it is sought to be based are wholly erroneous. However, the signing of an opinion may, for certain purposes, be regarded as equivalent to a pronouncement of judgment in open court.''

In *Cockrum v. Graham,* 143 Or 233, 242, 21 P2d 1084, we examined two documents, one of which was entitled a judgment and the other an order. We held:

''* * * The mere fact that the document of August 11 is entitled an order and not a judgment, we deem unimportant for the character of an instrument is determined by its contents and not by its title.''

In support of this conclusion we said:

''In State ex rel. Zilisch v. Auer, 197 Wis. 284 (221 N. W. 860, 223 N.W. 123), the court was confronted with the problem whether the paragraph which we shall now quote constituted a final order upon which an appeal could be predicated:

'' 'It is my opinion and decision that section 40-85 of the statutes is valid and constitutional; that the alternative writ of mandamus herein was properly issued; that defendant's motion to quash should be denied; and that if defendant

does not file a return to said alternative writ of mandamus herein within ten days, a peremptory writ of mandamus as prayed for by the petitioner should be issued. Let judgment be entered accordingly'.

"In holding that the above decision was sufficient to operate as the premise for an appeal, the court expressed itself thus:

" 'The relators moved to dismiss the appeal on two grounds: First, That the "opinion and decision" of the trial court did not constitute an appealable order. * * * In determining whether any particular form of judicial action is appealable, "It is not the form of the determination but the nature of the adjudication that is to be considered". Will of Jansen, 181 Wis. 83, 85 (193 N.W. 972). In holding that a similar "opinion and decision" of the county court of Douglas County was appealable, this court said: "It is its substance and nature, rather than the name given to the proceeding, either by court or parties, that must be the criterion in determining the question of appealability". Will of Pattison, 190 Wis. 289, 296 (207 N. W. 292).' "

■ The fact that the document of October 27 was entitled "opinion" is not determinative of the true nature of the instrument.

■ The document of October 27 does not mention costs, while the document of June 7 states: "without costs to either party." It is clear that neither party was entitled to costs. Therefore, the absence of a statement with regard to them would not in any event be fatal to the decree.

■ Although the absence of the words "It is hereby ordered, adjudged, and decreed" is not favored practice, in examining the closing statement of the document of October 27, we are of the opinion that the addition of these words was wholly unnecessary to the meaning

and sense of the statement. It is not a request for the preparation of a decree ''in accordance with this opinion''; it is a peremptory order which does not contemplate any further action.

The Supreme Court of Minnesota considered a similar clause in *State v. St. Cloud Milk Producers' Ass'n,* 200 Minn 1, 4, 273 NW 603. The court said:

> ''The court below made an order granting a petitioner a peremptory writ of *mandamus.* Petitioner contends that this order is not appealable. The claim is that the appeal is from an order for judgment, which is not appealable. The order concludes with the words: 'Let a peremptory writ issue accordingly.' This is not an order for judgment. It is an irregular judgment. The correct practice is to make findings of fact and conclusions of law and enter a formal judgment as in ordinary civil actions. Directing the writ to issue without findings of fact and conclusions of law and the entry of judgment has been criticized by this court, but our holdings have sustained such a practice.''

■ Plaintiff cites *Barone v. Barone,* 207 Or 26, 194 P2d 609, as authority for the proposition that the opinion was not the final decree of the court. In that case the opinion was oral; it was not reduced to a signed statement as in the instant case. Also the concluding statement of the trial judge in the Barone case was: ''You may prepare a decree accordingly.'' That contemplated further action; it was not final. It is our opinion that the paper signed on October 27 was not merely an opinion, but was the final decree. Therefore, the Barone case rule that a statement from the bench does not constitute a judgment until reduced to an order, decree, or judgment is not controlling.

Neither is our decision in *Ernst v. Logan Oldsmobile Co.,* 208 Or 449, 302 P2d 220, controlling. In

this latter case it clearly appears that the trial judge did not intend that his opinion should serve as the final judgment order. Three days after the filing of the memorandum opinion, a formal order was entered in the journal, allowing the new trial. In the instant case the final wording of the opinion was direct and mandatory; it spoke in the present tense; it disposed of the case and was clearly so intended.

Respecting the so-called "opinion" of October 27, 1954, it is noteworthy that plaintiff's position on this appeal is precisely the opposite of that assumed by him in resisting defendant's motion to vacate. As before noted, his opposition to that motion was based upon the theory that the opinion was the final decree, and the term of court in which it was entered having expired, that the court was without jurisdiction to vacate it. The trial court sustained his contention. Upon this appeal, however, he takes the stand that the alleged "judgment" of June 7, 1955, is in truth the final decree. In other words, plaintiff has blown both hot and cold upon this question. In our opinion, he was correct in the first position that he assumed and is incorrect now. No effect whatever can be given to the so-called "judgment" of June 7, 1955. The original case was finally settled and determined by the decree entered October 27, 1954.

No useful purpose would be served by filling the pages of the Oregon Reports with the intimate details of the unhappy lives of the litigants. It is sufficient to say that we have carefully examined the testimony and are of the opinion that the evidence supports the decree of divorce in favor of the defendant. It is noted, however, that in the original case the plaintiff herein, the defendant therein, in his cross complaint asked for a divorce in his favor upon the ground of cruel and

inhuman treatment. In the instant case he did not seek a divorce, but simply a decree of separation, based upon the theory of willful desertion. It is significant that the date fixed in his complaint for the commencement of the period of alleged desertion was July 16, 1953, the day the defendant in this suit left him. Considering the facts and circumstances of this case as a whole, we are impressed with the feeling that the instant suit was not commenced in good faith, but on the contrary, was commenced solely for the purpose of further harassing the defendant. The plaintiff has assumed a sort of "dog in the manger" attitude. His alleged attempts at reconcilation lack sincerity, and at no time offered defendant any assurances that if she resumed cohabitation he would refrain from visiting physical violence upon her. *Blair v. Blair,* 124 Or 611, 265 P 415; *Weatherspoon v. Weatherspoon,* supra. No wife, whatever may be her temperament, should be subjected to physical violence on the part of her husband. It is in extremely rare cases, if at all, that physical violence upon the wife by the husband might be deemed justified and excusable. Perhaps it might be excused in extraordinary situations where such violence was absolutely necessary in self defense against serious bodily harm, but it is common knowledge that such occasions are indeed most infrequent. The general rule is that a man has no right to strike his wife, as plaintiff did in this case, no matter what the oral provocation may be. Even between strangers it is a firm rule of law that oral provocation, however insulting it may be, will not justify an assault and battery. The days when the husband was the master and free to chastise his wife for her misconduct, as he would punish a child, have long since passed. Caveman tactics are no longer tolerated in this enlightened

age, an age of chivalry toward women, and one that fully appreciates the physical differences between men and women and woman's inability to defend herself by force against violence upon her person by one who mistakenly calls himself a man. A court has but little regard for a husband who strikes and beats his wife, no matter what the alleged oral provocation. The facts in this case, viewed from the standpoint most favorable to plaintiff, in no way justified the physical violence visited upon the defendant by plaintiff. For her own self-protection against physical abuse defendant had a lawful right to separate from the plaintiff.

Since July 16, 1953, these parties have been divorced in fact, if not in law. Under all the facts and circumstances of this case it is clear to us that these parties should be divorced, not only for their best interests, but also for the best interests of society.

The decree is affirmed. Defendant is to recover costs, together with the sum of $200 fixed as a reasonable attorney's fee on this appeal.

LUSK, J. (dissenting).

The decision of this case is, in my opinion, controlled by *Matlock v. Matlock*, 86 Or 78, 167 P 311. I therefore dissent.

McALLISTER, J., joins in this dissent.